UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON GENDRON,<br>     Defendant | Crim. No. 3:13-CR-30036-WGY |

### DEFENDANT'S SENTENCING MEMORANDUM

*Introduction*

Jason Gendron, through counsel, respectfully submits this Sentencing Memorandum in connection with his sentencing on October 27, 2014 and requests the Court to sentence him to the custody of the Bureau of Prisons for a period of not more than forty years, to be served concurrently with the sentence to the Massachusetts Department of Corrections, expected to be imposed in Berkshire Superior Court on October 28, 2014.  He also this Court to recommend to the Bureau of Prisons that he serve his sentence at FMC Devens. He has taken prompt responsibility for the crimes he has committed, agreeing early in the prosecution of this indictment to forgo pursuit of any motions to suppress and to accept the Government's offer to plea pursuant to Fed. R. Crim. P. 11(c)(1)(C). He has fulfilled all of his obligations under that agreement, including participating in a proffer session with law enforcement and the federal prosecutor and pleading guilty to the present federal indictment and to a related state court indictment in Berkshire Superior Court. He is remorseful about the offenses and the harm he has caused to the victims.

In accepting the Government's offer to plea in this case pursuant to Fed. R. Crim. P. 11(c)(1)(C), Mr. Gendron has agreed to accept as punishment an extraordinarily lengthy sentence of incarceration of between 40 and 50 years followed by a period of supervised release. The net result of any sentence encompassed by the agreed upon range is that Mr. Gendron will surely be subjected to close, ongoing court supervision until he is, at least, a very old man, and, potentially, for the rest of his life. As supported by the argument below, even if sentenced at the lower end of the agreed upon range of incarceration, Mr. Gendron's advanced age upon release will provide significant protection against the risk of recidivism, as will his long-term participation in sex offender treatment programs through the Federal Bureau of Prisons. Given these factors, a sentence of not more than forty years[1] would be "sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

*Procedural History*

Mr. Gendron appeared before Your Honor on July 11, 2014 and pleaded guilty to sixteen counts of Sexual Exploitation of Minors; Aiding and Abetting in violation of 18 U.S.C. §§ 2251(a) and (e), and 2 and one count of Possession of Material Involving the Sexual Exploitation of Minors in violation of 18 U.S.C. § 2252(a)(4)(B).

Mr. Gendron was first arrested on July 25, 2013 by the Massachusetts State Police and arraigned in Pittsfield District Court on charges related the present federal case on July 26, 2013.[2] He has been in the custody of the Berkshire County Sheriff since July 25,

---

[1] Assuming that Mr. Gendron earns all good time allowed to him by statute, he will still be at least 67 years old before he would be eligible for release.
[2] Upon Mr. Gendron's arraignment in Berkshire Superior Court, Docket No. 13-0144, the Berkshire County District Attorney's Office filed a *nolle prosequi* in the Pittsfield District Court case.

2013 and he has been subject to a federal detainer since his arraignment on this matter on October 4, 2013. Following his plea in the present federal matter on July 11, 2014, Mr. Gendron appeared before the Honorable Agostini, J. in Berkshire Superior Court on October 16, 2014 and pleaded guilty to various state charges related to the facts and circumstances of this case. He is scheduled to appear before that court again on October 28, 2014 for imposition of sentence and will be asking Judge Agostini to impose a joint recommendation of 25 to 30 years in state prison, to be served concurrently with any sentence imposed in this matter.

*Nature and Circumstances of the Offense*

With the exception of the objections noted in the Presentence Investigation Report, Mr. Gendron accepts and adopts the facts as stated in the report and as laid out by the Government in the Rule 11 Hearing.[3]

*Mr. Gendron - a Father, Son and Brother*

Mr. Gendron comes before this Court with a solid and consistent work history and a genuine concern for the futures of his three sons. Throughout this pretrial period and though he has voluntarily agreed to termination of his parental right, Mr. Gendron has remained actively involved in the judicial determination of who should raise his two youngest sons. It appears at this time that, at a minimum, he will have an opportunity to maintain a relationship with all of them and it appears likely that Mr. Gendron's brother will be allowed to raise the younger boy. That Mr. Gendron has been able to participate

---

[3] He also accepted without caveat or equivocation the facts as recited by the Commonwealth during the plea in Berkshire Superior Court. In any case, to the extent that he has raised any objections regarding the nature and circumstances of the offense, it is not necessary to resolve those objections, as the issues raised do not effect the overall guideline calculation to which all parties have agreed.

in preserving his sons' connections to his family is nothing short of a lifeline for Mr. Gendron. He understands, of course, that his ability to have continued involvement in his sons' lives will be seriously compromised by years of incarceration and that, at some point, the decision will be in their hands as to whether they wish to maintain contact, but he is grateful that the opportunity remains.

He also recognizes that his actions and the resulting punishment he must endure necessarily means that he will never see his mother, Dionne Gendron's, again as a free man. Ms. Gendron's sentiments, as characterized in the presentence report, poignantly crystallize Mr. Gendron's situation and the harm he has caused to the victims in this case, "tragic in every way." (PSR ¶ 165). She elaborates further in her letter to the Court (attached herein), acknowledging the "horrific" nature of her son's crimes and accepting the need for punishment, but asks that this Court recognize that her son is much more than these terrible crimes and asks that the Court exercise whatever discretion it has to ensure that Mr. Gendron serve his sentence in a location "within a reasonable distance as to make regular visitation possible." See Attachment A.

*Sex Offender Treatment in the BOP and the Inoculating Effect of Age on the Recidivism*

In preparation for sentencing in this matter and upon the advice of counsel, Mr. Gendron submitted to a psychological evaluation.[4] See *Psychological Evaluation.* In examining Mr. Gendron, Dr. Stacey Fiore, Psy.D. found that Mr. Gendron poses "a Low to Low-moderate risk to reoffend sexually" if released after the age of 60. *Id.* at 6. Dr.

---

[4] With the agreement of the Government, defense counsel has today emailed a copy of Dr. Stacey Fiore's report entitled, *Psychological Evaluation*, as well as her Curriculum Vitae, to the Court so as to make the documents available to the Court prior to the sentencing hearing. A copy of both documents has, this day, also been emailed to Assistant United States Attorney Steven Breslow. Defense counsel will introduce the documents into evidence at the sentencing hearing.

Fiore opines that though the circumstances of Mr. Gendron's case do present some risk factors for re-offense, several factors most associated with recidivism are not present here.[5] *Id.* Of particular import to Dr. Fiore, was the fact that Mr. Gendron would be over the age of sixty upon his release from incarceration and she explains that the most recently version of the STATIC-99, an actuarial tool used to assess the risk of recidivism among sex offenders, places "a greater emphasis on the role of age as a risk factor", specifically that younger offenders are at greater risk to recidivate. *Id.* at 5-6.

Undeniably, Mr. Gendron will have significant issues to work through as he serves what will, in any case, be a lengthy sentence of incarceration. Though Mr. Gendron has been able to acknowledge to a some degree his wrongdoing at all times with counsel, Dr. Fiore's evaluation of Mr. Gendron revealed significant "cognitive distortions" regarding the abuse he inflicted. Dr. Fiore notes, however, that this kind of denial is not uncommon among sexual offenders and she does note that Mr. Gendron's view of his circumstances does offer hope that he would benefit from treatment, finding "that he has already made some significant progress in acknowledging many aspects of the offenses." And that "[h]e is open to treatment and understands that what he has done is not acceptable behavior." It is important to note that during the time period the relevant criminal acts were perpetrated Mr. Gendron, by his own admission, was potentially struggling with a worsening problem of cocaine abuse, but he has never sought to cast this as an explanation, excuse, or even reason for his crimes.

Dr. Fiore's observations regarding Mr. Gendron's strides toward acceptance and

---

[5] Examples of factors *not* present in this case cited by Dr. Fiore include offending against male victims, prior sexual offenses/sentencing dates, offending against strangers, and juvenile sexual offenses by the defendant. *Psychological Evaluation* at 6.

acknowledgement of the harm he has caused has been borne out by his unequivocal and straightforward pleas in federal and state court. While the motivating effect of avoiding guideline-range life sentence is not to be discounted, Mr. Gendron sincerely desired to pursue a course that avoided inflicting any further pain upon the victims in this case. Even since his evaluation with Dr. Fiore, defense counsel has observed a continued evolution in the degree of introspection Mr. Gendron is able to demonstrate regarding his crimes and it should be noted that this is despite a paucity of therapeutic options available to him as a pre-trial detainee at the Berkshire County House of Correction.

Unlike his present circumstance, Mr. Gendron will have therapy opportunities while incarcerated. It is likely that he will be classified to a Sex Offender Management Program facility, where Mr. Gendron will have access to mental health services, and, particularly in the final years of his sentence, access to specific programming to address his treatment needs as a sex offender and to reduce the risk of recidivism. This is consistent with Dr. Fiore's recommendations and is appropriate given the circumstances of this case. Mr. Gendron is in agreement that he is in need of treatment and would request that this court make any recommendations within its power that he be designated to a facility within the Bureau of Prisons with robust treatment options for sex offenders.

*Conclusion*

This Court knows well the statutes and the recent case law on sentencing. Congress delineated the goals of sentencing in 18 U.S.C. § 3553(a), and requires courts to craft a criminal defendant's sentence in light of these policy directives. The overarching directive is the need to impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. 18 U.S.C. § 3553(a)(emphasis

added). These purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, create adequate deterrence, protect the public from future crimes of the defendant, and provide the defendant with necessary treatment and training. 18 U.S.C. § 3553(a).

Whether Your Honor imposes the Government's recommendation or the Defendant's, Mr. Gendron is facing sure and significant punishment. Retribution in this case will surely be served as well in forty years as in fifty. The agreement entered into by Mr. Gendron and the Government, however, was intended to achieve a result that offers Mr. Gendron some hope that he will not die in prison. Notwithstanding the lengthy sentence being contemplated in this case, the need to address goal of rehabilitating Mr. Gendron is real, not hypothetical. Further, if the offer made by the Government here is to be construed as meaningful opportunity to avoid life in prison for Mr. Gendron, then a sentence at the lower end of the agreed upon range, specifically, the minimum sentence of forty years, must be given serious consideration and ought not be dismissed out of hand. Mr. Gendron humbly asks that this Court sentence him to no more than forty years incarceration, and otherwise agrees to all other terms of supervised release and conditions sought by the Government in this case.

        Respectfully Submitted,
        Jason Gendron, DEFENDANT,
        By his attorney,

        /s/Marissa Elkins
        Marissa Elkins, Esquire

348 Round Hill Rd., Suite 1
Northampton, MA 01060
melkins@marissaelkinslaw.com
(413) 341-6944
(800) 381-5436 (fax)
BBO#668840

---

Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 22, 2014.

/s/Marissa Elkins